<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

TRANSLINK TRADING LIMITED,

               *Plaintiff,*

     v.

GLOBAL AEROSPACE SERVICES LLC,

               *Defendant.*

Civil No.: 25-cv-5928 (KSH) (AME)

<u>OPINION</u>

**Katharine S. Hayden, U.S.D.J.**

**I.      Introduction**

      Plaintiff Translink Trading Limited has sued defendant Global Aerospace Services LLC, alleging that it provided neither the parts Translink ordered from it nor a refund.  Global has moved to dismiss four of the six counts asserted against it on the ground that they are duplicative of Translink's breach of contract claim.  The motion is fully briefed and is decided without oral argument.

**II.     Background**

      The complaint alleges as follows.  Translink is a logistics company incorporated in the British Virgin Islands and is based in Hong Kong.  (D.E. 1, Compl. ¶ 3.)  It "provides air and ocean freight, customs brokerage, warehousing and distribution services."  (*Id.*)  Global is an aviation parts supplier based in New Jersey; in its certificate of formation, it stated that it engages in the "export of aerospace products to overseas companies."

      The parties agreed that Global would supply Translink hydromechanical assembly units, an actuator assembly, an inertial reference unit, and a control unit, as evidenced by four purchase orders dated April 21, 2023, August 9, 2023, August 23, 2023, and January 15, 2024.  (Compl.

1

¶¶ 7-8 & Ex. B.)  Global issued invoices for these purchase orders, and Translink wired Global four payments totaling $544,500.  (*Id.* ¶¶ 8-9 & Ex. C, H.)  The last of these payments was made on January 17, 2024.  (*Id.* ¶ 9.)

Global "failed to supply most of the ordered parts," prompting Translink to repeatedly and unsuccessfully seek a refund.  (*Id.* ¶¶ 1, 11-14 & Ex. D though H.)  Translink asserts that Global offered shifting reasons for its failure to perform, including that it was awaiting export licenses and that it was awaiting refunds from its vendors, and that Global provided assurances that it would send a refund to Translink but never did.  (*Id.* ¶¶ 2, 11, 13-16.)

Translink formally demanded a refund on August 30, 2024 seeking $432,192.20 plus interest for goods that "were ordered from [Global] but have not been delivered or were delivered without the necessary documentation."  (Compl., Ex. G.)

Two months later, on October 31, 2024, Translink's attorney sent a demand letter asserting that Global was in breach of the purchase orders by "fail[ing] to comply or partly compl[ying] with [its] shipping obligations" under the purchase orders and invoices, and that Global "never shipped parts as contracted."  (Compl., Ex. H, at 1.)  The letter sought a refund of $353,925 plus $8,815.07 in interest, totaling $362,740.06.  (*Id.*)  Paul Latushko, who is alleged to be Global's owner and authorized representative, "asked for additional time to be able to check with the manufacturers as to the status of the orders and to complete an accounting of the funds due."  (Compl. ¶¶ 10, 15.)  On November 22, 2024, he represented that Global was "requesting refunds from vendors who are supplying different parts and expected a response within weeks."  (*Id.* ¶ 16.)  After that, Latushko did not provide any update.  (*Id.*)

Translink filed this action on May 28, 2025, asserting claims for breach of contract (Count 1), unjust enrichment (Count 2), money had and received (Count 3), promissory estoppel

(Count 4), violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 *et seq.* (Count 5), and breach of the New Jersey Uniform Commercial Code (Count 6).  It invokes the Court's diversity jurisdiction.[1]

Global has moved under Fed. R. Civ. P. 12(b)(6) to dismiss Counts 2 through 5 as duplicative of the breach of contract claim in Count 1.  (D.E. 13-1, Moving Br.)  It argues that these counts do not state a claim for relief because it does not dispute that the purchase orders reflected an enforceable contract.

Translink counters that its NJCFA claim is based on "fraudulent misrepresentations" by Global about its purported efforts to obtain export licenses and secure refunds from manufacturers, and that it has sufficiently pleaded each of the elements of the claim.  (D.E. 14, Opp. Br. 1.)  Translink also argues that its quasi-contract claims should be permitted to proceed past the pleadings stage because pleading in the alternative is permitted, and that its promissory estoppel claim also seeks recovery for losses going beyond what the breach of contract claim seeks to recover.  (*Id.* at 6-7.)

Global replies that the NJCFA claim must fail because Translink has not adequately pleaded the ascertainable loss element of that claim.  (D.E. 19, Reply Br. 4-5.)  As to the quasi-contract claims, Global continues to assert that because it has not disputed the existence or validity of the contract Translink relies on (*i.e.*, the purchase orders), these claims must be

---

[1] In Translink's diversity disclosure statement under Fed. R. Civ. P. 7.1(a)(2), it represents that it is a limited liability company whose member, Latushko, is a citizen of New Jersey.  (D.E. 3.) The Court construes this as a representation that Latushko is Translink's *only* member.  And because an LLC's citizenship is determined by the citizenship each of its members, *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010), this means Translink is representing that it is only a citizen of New Jersey.  With this understanding, Translink has shown that there is complete diversity of citizenship between it and defendant Global.  *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (complete diversity is required under 28 U.S.C. § 1332).  There is no dispute that the amount in controversy exceeds $75,000.

dismissed as duplicative.  Global also challenges as inapposite the case law Translink relies on to support its promissory estoppel claim.  (*Id.* at 6.)

## III.    Standard of Review

Fed. R. Civ. P. 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  On a Rule 12(b)(6) motion to dismiss, the Court "ask[s] whether the complaint states a claim for relief, taking all factual allegations as true, disregarding legal conclusions, and drawing all reasonable inferences in the plaintiff's favor."  *Migliore by Migliore v. Vision Solar LLC*, 160 F.4th 79, 86 (3d Cir. 2025).  The standard is plausibility pleading; that is, the question is whether the complaint "set[s] forth enough factual allegations to 'state a claim to relief that is plausible on its face,'" which in turn means that the factual allegations "permit[] a reasonable inference that the defendant is liable for the misconduct alleged."  *Doe v. University of Sciences*, 961 F.3d 203, 208 (3d Cir. 2020) (citations omitted).

## IV.    Discussion

The option to plead claims in the alternative under Fed. R. Civ. P. 8(d) does not relieve Translink of satisfying the plausibility standard for each claim, which requires it to assert facts that, assumed true, would permit the Court to reasonably conclude that Global is liable.

Unjust enrichment requires "both that defendant received a benefit and that retention of that benefit without payment would be unjust."  *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994).[2]  The plaintiff must have "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and . . . the failure of remuneration [must have] enriched defendant beyond its contractual rights."  *Id.*  If the challenged conduct is covered by a contract, quasi-contract claims such as unjust enrichment do not lie.  *Suburban Transfer Svc.,*

---

[2] The parties both cite New Jersey law, and the Court follows suit.

4

*Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226-27 (3d Cir. 1983) ("Quasi-contract liability will not be imposed . . . if an express contract exists concerning the identical subject matter."). On the other hand, the two claims can co-exist where the unjust enrichment claim is based on conduct not covered by the contract, or where the validity of the contract is in dispute. *See, e.g.*, *Platinum Supply Grp. LLC v. A&O USA Inc.*, 2024 WL 5197086, at *11 (D.N.J. Dec. 23, 2024) (Quraishi, J.); *Durr Mech. Constr., Inc. v. PSEG Fossil*, LLC, 516 F. Supp. 3d 407, 416 (D.N.J. 2021) (McNulty, J.).

Neither scenario exists here. Translink's unjust enrichment claim "is based on the same facts and theory as its breach of contract claim." *KZ Entm't LLC v. Sulekha USA LLC*, 2024 WL 5244479, at *4 (D.N.J. Dec. 30, 2024) (Salas, J.). *Compare* Compl. ¶¶ 23-25 *with id.* ¶¶ 18-21.) It seeks the same relief—the same amount sought as a refund via the contract claim. And there is nothing in the complaint or otherwise in the motion record indicating that a dispute exists over the validity of the contract (*i.e.*, the purchase orders). In its opposition brief, Translink argues that there is a dispute about the "scope" of the contract, and that defendant has not admitted to breaching it. (D.E. 14, Opp. Br. 7.) But Global agrees that the purchase orders represent the contract, and the test is not whether a defendant admits to breaching the contract. It is whether the defendant challenges the existence or validity of a contract, either expressly or by, for example, asserting a fraudulent inducement claim. *See, e.g.*, *Platinum Supply*, 2024 WL 5197086, at *11 (allowing unjust enrichment claim to proceed alongside breach of contract claim where defendant had disputed the validity of the contract and plaintiff's fraudulent inducement allegations "amount[ed] to a dispute over the validity of the contract, which further bolsters the argument that unjust enrichment could be a viable alternative remedy"). The unjust enrichment

5

claim will be dismissed.[3]

The elements of Translink's claim for money had and received are "essentially the same as those for unjust enrichment." *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 381 (D.N.J. 2021) (McNulty, J.). *See also Est. of Hersko v. Hersko*, 2026 WL 16664, at *11 (App. Div. Jan. 2, 2026) ("An action for money had and received is an equitable action governed by equitable principles (and) may in general be maintained whenever one has money in his [or her] hands belonging to another which in equity and good conscience he [or she] ought to pay over to that other." (quoting *Twp. of Franklin v. Jones*, 86 N.J.L. 224, 225 (E&A 1914) (alterations in original)). Again here, Translink has asserted the same factual basis for this claim as for the breach of contract claim, and it seeks the same relief. (*Compare* Compl. ¶¶ 27-28 *with id.* ¶¶ 18-21.) For the same reasons discussed above about the unjust enrichment claim, this claim must be dismissed as well. *Accord Dougherty*, 534 F. Supp. 3d at 381.

To withstand dismissal on its promissory estoppel claim, Translink must adequately plead "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Goldfarb v. Solimine*, 245 N.J. 326, 339-40 (2021) (cleaned up). "Promissory estoppel generally serves as a stop-gap where no valid contract exists to enforce a party's promise." *Kiss Elec., LLC v. Waterworld Pools, N.E., Inc.*, 2015 WL 1346240, at *5 (D.N.J. Mar. 15, 2015) (Kugler, J.). *See also Gujj v. Inpatient Servs. of N.J.*, 2022 WL 2834998, at *3 (D.N.J. July 20, 2022) (Shipp, J.) ("Although plaintiffs may plead in the alternative under Rule 8(d)(2), they cannot assert both breach of contract and promissory estoppel claims unless the contract is disputed or the matter at issue is

---

[3] As discussed further *infra*, Translink's opposition brief makes some references to fraudulent inducement in discussing its NJCFA claim, but it has not asserted any such claim or even pleaded any such factual allegations.

6

beyond that covered in the contract.").

Translink alleges Global made three promises: one, that it would fulfill the purchase orders; two, that it would resolve "issues with the export licenses"; and three, that it would return Translink's funds. The first promise, the expectation that Translink would and did allegedly rely on it, and the "detriment" it suffered (in the exact amount sought as a refund for the asserted contract breach), overlap entirely with the breach of contract claim and as such cannot support a promissory estoppel claim where, again, there is no dispute over the contract's validity and no matters beyond what is covered by the contract.

For different reasons, the second and third promises also fail to support a promissory estoppel claim. The only step Translink asserts it took in reliance on those promises was that it "patiently waited for resolution of [Global's] issues with fulfillment of the Purchase Orders." (Compl. ¶ 32.) And although it offers the conclusory modifier that this reliance was to its "own substantial detriment" (*id.*), it does not identify *how* it was harmed. By that point it had already paid Global, so payment cannot be the "detriment." Translink gets closer in its opposition brief, where it suggests that it "suffered losses beyond just funds paid for the airplane parts." (D.E. 14, Opp. Br. 7.) But the complaint paragraphs it cites say no such thing, and to the extent this assertion (which itself is conclusory) can be construed as purporting to amend the complaint allegations, it is ineffective. *Pa. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (cleaned up)). This count is dismissed.

Last is the claim under the NJCFA. "To state a claim under the CFA, an individual must plead an unlawful practice, an ascertainable loss, and a causal relationship between the two." *Robey v. SPARC Grp. LLC*, 256 N.J. 541, 555 (2024). The "unlawful practice" can be a

7

knowing misrepresentation, an omission of material fact, or a violation of administration regulations. *Id.* An "ascertainable loss" is a loss that is "quantifiable or measurable, not hypothetical or illusory," and "an estimate of damages, calculated within a reasonable degree of certainty will suffice to demonstrate an ascertainable loss." *Id.* (cleaned up).

A claim under the NJCFA sounds in fraud, and the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires that "the circumstances constituting fraud or mistake" be stated "with particularity," applies. *In re U.S. Vision Data Breach Litig.*, 732 F. Supp. 3d 369, 381 (D.N.J. 2024) (O'Hearn, J.). This means the complaint "must state what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led plaintiff to sustain an ascertainable loss." *Id.* (cleaned up). For affirmative misrepresentations, apparently what Translink alleges here, it was required to plead "the what, where, and when of [the] alleged misrepresentations." *Id.* (cleaned up).

The complaint allegations do not meet this heightened standard, or Rule 12(b)(6)'s requirements. For the first element of the claim, Translink pleads the following alleged misrepresentations:

> 40. Defendant made material misrepresentations evidencing deception, fraud, or false pretenses, including but not limited to:
>
> a. misrepresentations regarding Defendant's capacity to provide the subject parts to Plaintiff;
>
> b. misrepresentations regarding the Defendants['] capacity, efforts and timing of obtaining the requisite export licenses;
>
> c. misrepresentations regarding providing refunds.

(Compl. ¶ 40.) There is no "when" asserted for any of these alleged misrepresentations. The

8

emails attached to the complaint do not provide a frame of reference[4] that might cure the problem.  Regarding export licenses and refunds, there is no loss alleged to have been caused by these misrepresentations, which were made *after* Translink paid Global for the parts.  In its brief, Translink cites "lost profits, repairs costs, replacement costs, and cover damages," but cites two paragraphs of the complaint that mention no such thing and nowhere does Translink offer any measurement or estimate of these purported losses.  (D.E. 14, Opp. Br. 5 (citing Compl. ¶¶ 43-44).) From this, the Court cannot reasonably infer that Global violated the NJCFA.

Regarding Global's purported statements that it had the "capacity to provide the subject parts" to Translink, elsewhere in the complaint Translink asserts that Global "represented that it was ready and able to ship such goods and thus it issued invoices for the same, directing Translink to pay for the units."  (Compl. ¶ 8.)  This edges slightly closer to meeting the particularity and plausibility requirements, but still leaves considerable uncertainty.  Who made these representations, and how?  What quantifiable, measurable losses did Translink suffer as a result?  The complaint offers only conclusory statements in that respect.

Translink offers a slightly different description for the NJCFA claim in its opposition brief: that Global's "unlawful practice involved soliciting airplane part purchases from consumers with false representations, without ever intending to ship the parts nor provide any refunds."  (D.E. 14, Opp. Br. 5.)  Global then "cut off communication and ignore[d] any requests for a refund" and "repeatedly lied about" the reasons for the delays.

But this is not how Translink pleaded its NJCFA claim, and it did not assert or offer factual allegations in support of a fraudulent inducement claim.  If Translink is shifting gears

---

[4] On a motion to dismiss, the Court may consider, *inter alia*, "exhibits attached to the complaint" and "documents that form the basis of a claim."  *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).

now in response to Global's argument that the NJCFA claim merely repurposes the breach of contract claim, or because it recognized deficiencies in its claim, the cure is through amendment rather than briefing.

In sum, Counts 2 through 5 will be dismissed, without prejudice to Translink seeking to amend the complaint, if it has a basis to do so, within 21 days.

## V.        Conclusion

The motion to dismiss is granted, and Counts 2, 3, 4, and 5 are dismissed without prejudice.  An appropriate order will issue.

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

Date: March 31, 2026